Rod A. SIVERTSEN, Appellant,

v.

STATE of Alaska, Appellee.

No. 1600.

Court of Appeals of Alaska.

Aug. 21, 1998.

Julia D. Moudy, Assistant Public Defender, Juneau, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Cynthia L. Herren, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, C.J., and
MANNHEIMER and STEWART, JJ.

STEWART, Judge.

Rod A. Sivertsen appeals his convictions for second-degree burglary[1] and second-degree theft.[2] He argues that Superior Court Judge Larry R. Weeks committed various errors during trial when he admitted certain evidence and denied Sivertsen's motions for a mistrial and a judgment of acquittal on one count. But we conclude that Judge Weeks did not abuse his discretion and that he did not err by denying the acquittal motion. Therefore, we affirm Sivertsen's conviction. However, we find that we must vacate Sivertsen's sentence.

*Facts and proceedings*

On July 31, 1996, Sergeant Chuck Perry of the Ketchikan Police Department called the Juneau Police Department and spoke to Officer Ben Cornell. Perry told Cornell that Sivertsen was flying to Juneau that evening and that he was a suspected burglar. A photograph of Sivertsen was faxed to the Juneau police.

Sivertsen arrived as expected. A contingent of Juneau police and a couple of members of the Juneau Citizens Patrol tailed him from the airport to the downtown area and attempted to maintain surveillance, but occasionally lost track of him. About 2:10 A.M. on August 1, 1996, Officers Wrightson and Van Sickle saw Sivertsen in a second-story window of the Merchant's Wharf, a building subdivided into multiple offices and stores. Sivertsen shattered a glass door but could not get out. He broke out a nearby window and stepped out of the building with a hammer in his hand. He was arrested. The police found over six hundred dollars in cash and a putty knife in his possession.

Inside Merchant's Wharf, the office of Cruise Line Agency of Alaska had been forcibly entered. Six hundred dollars in cash was missing from the office. Donald Habeger, Cruise Line's operations manager, told the police that the hammer and putty knife came from the Cruise Line office.

Sivertsen was indicted for second-degree burglary of the Cruise Line office, second-degree burglary of Merchant's Wharf, second-degree theft of the cash from Cruise Line, and second-degree criminal mischief for breaking the glass door and window. The jury found Sivertsen guilty of both burglary counts and the theft count but could not agree on the criminal mischief charge. Prior to sentencing, Judge Weeks merged the burglary counts, and the state dismissed the criminal mischief charge.

At trial, Sivertsen sought to exclude reference to the warning received by the Juneau police that Sivertsen was heading their way. He argued that the evidence was irrelevant to the charges, and, under Alaska Rule of Evidence 403, was more prejudicial than probative. Judge Weeks permitted testimony about the phone call to explain the officers' interest in Sivertsen, but did not allow testimony detailing the basis for the concern by Ketchikan police that Sivertsen was an active burglar. Judge Weeks provided a limiting instruction to the jury on the uses they could make of that evidence: "To the extent that the call from Ketchikan was made, you're not to consider that as evidence that the defendant did what he was charged with doing. It's to explain to you why the police did what they did and is offered for no other reason."

■■■■ On appeal, Sivertsen argues that the limiting instruction did not cure the violation of Alaska Evidence Rule 404(b). Sivertsen assumes that the evidence of the warning phone call is evidence of a prior bad act. But we analyze that evidence differently. The evidence actually admitted was not direct evidence of a prior bad act by Sivertsen but was evidence from which a factfinder could

---

1. AS 11.46.310(a).

2. AS 11.46.130(a)(1).

infer that Sivertsen was an individual who had engaged in a prior bad act. Judge Weeks foreclosed impermissible uses of that evidence by the jury with his limiting instruction. His instruction narrowed the jury's consideration of the phone-call evidence to "explain why the police did what they did and is offered for no other reason." A jury is presumed to follow a court's limiting instruction on the purpose for which they can consider evidence.[3]

Given the strict limitations placed on the jury's use of the phone call evidence, we conclude that Judge Weeks did not abuse his discretion by limiting the jury's use of the warning and admitting the evidence.[4]

■ Even if the admission of that evidence was error, we conclude the error was harmless because the evidence did not appreciably affect the jury's verdict.[5] The evidence that Sivertsen committed the offenses was strong. He was caught in the act of breaking out of Merchant's Wharf carrying tools that came from the Cruise Line office and possessing cash consistent with the cash missing from the Cruise Line office.

■ Sivertsen's next point concerns Habeger's testimony identifying the hammer and the putty knife. Following that testimony, Sivertsen claimed a discovery violation and moved for a mistrial. Although he conceded Habeger was identified in the police reports, he argued that the absence of Habeger's identification of the hammer and the putty knife in the reports entitled him to a mistrial. Counsel for Sivertsen did not interview Habeger prior to trial.

The prosecutor told the court he did not realize there was no reference in the police reports to Habeger's identification of the tools. He said that he learned of the identification of the tools the week before trial because he interviewed Habeger as part of his trial preparation. Judge Weeks denied the motion for a mistrial. Sivertsen then moved to exclude the testimony that had

been received, or in the alternative, for a one-day continuance. Judge Weeks denied the motion to exclude the evidence and indicated he would take the motion for a continuance under advisement. The issue of a continuance did not come up again during trial.

On appeal, Sivertsen claims that this fact pattern establishes a violation of Alaska Criminal Rule 16 and that Judge Weeks should have granted his motion for a mistrial because of that violation. We disagree with both assertions.

We do not understand Criminal Rule 16(b)(1)(i) to require disclosure by the prosecutor of Habeger's oral statements made during pre-trial preparation shortly before trial. We reach that conclusion by analyzing three subsections of Criminal Rule 16(b)(1):

*(b) Disclosure to the Accused.*

(1) *Information Within Possession or Control of Prosecuting Attorney.* (A) Except as is otherwise provided . . ., the prosecuting attorney shall disclose the following informa tion within the prosecuting attorney's possession or control to defense counsel . . . :

(i) The names and addresses of persons known by the government to have knowledge of relevant facts and their written or recorded statements or summaries of statements;

(ii) Any written or recorded statements and summaries of statements and the substance of any oral statements made by the accused;

(iii) Any written or recorded statements and summaries of statements and the substance of any oral statements made by a co-defendant[.]

Each subsection requires disclosure of "written or recorded statements and summaries of statements," but only subsections (ii) and (iii) require disclosure of "the substance of any oral statements." Sivertsen argues that failure to disclose Habeger's oral identification

---

**3.** See *State v. McDonald,* 872 P.2d 627, 654–55 (Alaska App.1994) (citing *Whiteaker v. State,* 808 P.2d 270, 277 (Alaska App.1991)).

**4.** See *Hawley v. State,* 614 P.2d 1349, 1361 (Alaska 1980).

**5.** See *Love v. State,* 457 P.2d 622, 629–31 (Alaska 1969).

of the hammer and putty knife was a violation of Rule 16(b)(1). But we can not reach that conclusion after our examination of the language of the rule.

Criminal Rule 16(b) was derived from the American Bar Association (ABA) Standards for Criminal Justice, "Discovery and Procedure Before Trial," Standard 2.1(a) (approved draft 1970). That text provides:

*2.1 Prosecutor's obligations.*

(a) Except as is otherwise provided ..., the prosecuting attorney shall disclose to defense counsel the following material and information within his possession or control:

(i) the names and addresses of persons whom the prosecuting attorney intends to call as witnesses at the hearing or trial, together with their relevant written or recorded statements;

(ii) any written or recorded statements and the substance of any oral statements made by the accused, or made by a codefendant if the trial is to be a joint one[.]

The ABA standard differs from Criminal Rule 16 in a few important areas. First, the ABA standard requires a prosecutor to disclose only the statements of "persons whom the prosecuting attorney intends to call at ... trial." Our supreme court has rejected that limitation.[6] Second, the supreme court expanded the prosecution's duty to require disclosure of all co-defendants' statements. Third, the supreme court added "and summaries of statements" to the ABA language "written or recorded statements."

But the supreme court retained the ABA's distinction between the scope of disclosure required for statements of witnesses and the scope required for statements of defendants and co-defendants. The court followed the ABA standard by including the phrase "and the substance of any oral statements" in sections (b)(1)(ii) and (iii), but omitted this phrase from section (b)(1)(i) which applied to statements made by witnesses such as Habeger.

Both the language of and the commentary to ABA Standard 2.1(a) specifically indicate that the term "statement" does not include an unrecorded oral statement such as Habeger made to the prosecutor.[7]

We recognize that this interpretation of Criminal Rule 16(b)(1)(i) could be abused. But there is no indication here of bad faith by the prosecutor. Although Habeger's statements identifying the tools were not previously disclosed to Sivertsen, Sivertsen has not identified anything in this record that demonstrates that the prosecutor tried to circumvent the rule. Nor does this record reflect any effort by the prosecution to discourage Habeger from discussing the case with Sivertsen.

 Even if the failure to disclose Habeger's identification of the tools was a discovery violation, the defendant must show a plausible way in which his defense could have been prejudiced by the discovery violation for a mistrial to be warranted.[8] Although Sivertsen was apparently surprised by Habeger's discussion of the tools, he did not explain how the evidence undermined his case.

 In the absence of a showing of prejudice, there is no error in denying a motion for a mistrial based on a claimed discovery violation.[9] Habeger's identification of the tools, while evidence that supported the prosecution's case, did not undermine any defense announced by Sivertsen. In opening statement, Sivertsen indicated that he was reserving his analysis of the facts until closing argument. He urged the jury to keep an open mind on the case and to remember the presumption of innocence. Thus this case is unlike *Bostic v. State*.[10] In *Bostic*, the prosecution had committed an intentional discovery violation by not informing the defense of

---

6. *See Howe v. State*, 589 P.2d 421, 424 (Alaska 1979).

7. *See* II Standards for Criminal Justice, § 11.–2.1 and commentary at 62 (Approved Draft 1970).

8. *See Bostic v. State*, 805 P.2d 344, 348 (Alaska 1991).

9. *See Jurco v. State*, 825 P.2d 909, 917 (Alaska App.1992).

10. 805 P.2d 344 (Alaska 1991).

an expert witness whom the prosecutor would call. Since the testimony of the expert significantly undermined Bostic's announced defense, the supreme court held that the prosecution bore the burden of proof that the defendant was not prejudiced by the intentional discovery violation. And if the prosecution failed to meet that burden, the court held that a mistrial should be declared.

From our review of this record, we conclude that Judge Weeks did not abuse his discretion when he denied Sivertsen's mistrial motion.[11]

■ Next we consider Sivertsen's argument that Judge Weeks erroneously denied his motion for a judgment of acquittal on the burglary count relating to Merchant's Wharf. Sivertsen maintains that he was entitled to a judgment of acquittal because there was no evidence that he forced his way into Merchant's Wharf. We disagree. First, forced entry is not an essential element for burglary. What the prosecution was required to prove here was that Sivertsen entered or remained unlawfully in Merchant's Wharf. Our review of the record shows that the jury was presented with sufficient evidence for reasonable jurors to conclude that Sivertsen had entered or remained unlawfully in Merchant's Wharf.[12] Second, Judge Weeks merged the two burglary counts for sentencing. Even if Judge Weeks should have granted his motion for judgment of acquittal on the Merchant's Wharf burglary count, Sivertsen has suffered no harm because he does not argue that there was insufficient evidence to support the conviction for the Cruise Line burglary.

■ We now address Sivertsen's claim that the prosecutor's final argument was erroneous. The prosecutor made the following comments:

Now [I] have to prove that he did so with the intent to commit a crime. The court read you the instruction on what's called state of mind and I'm not going to go over all the instructions. All I want you to do is read the packet, apply the law. I'm not going to read the whole intent state of mind instruction but state of mind may be proven by circumstantial evidence. (indiscernible) go on. There can be no eyewitness to the state of mind with which acts are done or omitted, but what a defendant does or fails to do may indicate the defendant's state of mind.

The point is we don't have some way of getting in somebody's head, but what we all do, we usually are assumed to intend to do. I intended to hit the hammer and hit the desk there. You can assume I intended to do that, you saw me do it. He intended to burglarize Cruise Line Agencies of Alaska, he kicked the door.

Sivertsen objected, claiming that those comments impermissibly shifted the burden of proof under *Sandstrom v. Montana*.[13] The objection was overruled. He moved for a mistrial. The motion was denied.

We conclude that the prosecutor's comments did not shift the burden of proof. Those comments informed the jury that they were permitted to infer Sivertsen's intent from his conduct. Also, Judge Weeks gave an appropriate instruction that confirmed that the jury was permitted to draw inferences from Sivertsen's conduct.[14] We hold that the prosecutor's argument here, which mirrored Judge Weeks' instruction, was not erroneous.

■ Following final argument, Sivertsen also moved for a mistrial on the basis of the cumulative error of the court and the prosecutor during trial.[15] But the combined impact of cumulative error, even if each individual error is harmless, must be so prejudicial that Sivertsen must have been deprived of a

**11.** See Roth v. State, 626 P.2d 583, 585 (Alaska App.1981).

**12.** See Dorman v. State, 622 P.2d 448, 453 (Alaska 1981); Deal v. State, 657 P.2d 404, 405 (Alaska App.1983).

**13.** 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

**14.** See Gipson v. State, 609 P.2d 1038, 1042 (Alaska 1980).

**15.** See Drumbarger v. State, 716 P.2d 6, 16 (Alaska App.1986).

fair trial. In our examination of the record of Sivertsen's trial, we do not find cumulative error. Therefore, Judge Weeks did not abuse his discretion by denying that final mistrial motion.

Prior to sentencing, the state gave notice that Sivertsen had a prior felony conviction in Ketchikan and two felony convictions in Washington. Sivertsen admitted the Ketchikan conviction, but denied the Washington convictions. The prosecution was able to produce a certified copy of one of the Washington felony convictions. Since he had two prior convictions for purposes of presumptive sentencing, Sivertsen was subject to a three-year presumptive term on the burglary count and on the theft count.[16] Judge Weeks found that the statutory aggravating factor that Sivertsen had a history of repeated violations of criminal laws similar in nature to his convictions was proven.[17]

 Judge Weeks found that the only important sentencing factor was isolation. He concluded that Sivertsen was a worst offender. He sentenced Sivertsen to four years with one year suspended on each count, with the counts running consecutively. Thus Sivertsen received a composite six-year term. That term is greater than the five-year maximum term for either offense. Because Judge Weeks found that Sivertsen was a worst offender a sentence up to the maximum term of five years is justifiable.[18] But a trial judge imposing a composite sentence greater than the maximum sentence for the defendant's most serious offense must find that the sentence is necessary to protect the public.[19] Judge Weeks did not make that finding. Therefore, we must vacate the sentence and remand the case to the superior court for re-sentencing. If Judge Weeks concludes that he must impose a composite sentence in excess of five years to serve, he must find that the term is required for the protection of the public.

**16.** AS 12.55.125(e)(2).

**17.** AS 12.55.155(c)(21).

**18.** *See State v. Wortham,* 537 P.2d 1117, 1120 (Alaska 1975).

*Conclusion*

We VACATE Sivertsen's sentence and REMAND to the superior court for re-sentencing. In all other respects, the judgment is AFFIRMED.

**19.** *See Mutschler v. State,* 560 P.2d 377, 380–81 (Alaska 1977).